We'll hear argument next in Wagner v. Barclays PLC. May it please the Court, Jeffrey Scott from Sullivan and Cromwell for the Defendant's Appellants. This Court should reverse the District Court's decision certifying the proposed class here for at least three principal reasons that I'll discuss today if I have the time. First, the affiliated you presumption is not available to plaintiffs because this case involves only affirmative misstatements, and Barclays did not owe any duty of disclosure to the plaintiffs. Second, the District Court applied an incorrect evidentiary standard to assessing the rebuttal price impact evidence, and regardless of the standard that was applied, the undisputed evidence showed that alleged fraud had no price impact. Third, plaintiffs had not properly invoked the basic presumption in the first instance because the District Court erroneously held that efficiency could be proven without considering any direct evidence as to whether the new material information caused a stock price reaction. Now, I'd like to start first by briefly addressing affiliated you. I don't think it should detain us long. Now, the Supreme Court in affiliated you, this Court and Wilson and Starr and many other courts have said that the affiliated you presumption is only available in cases primarily involving omissions. The complaint in this case had scores of affirmative misstatements. The 13 statements that Judge Shinlen allowed to proceed after the motion to dismiss are all affirmative misstatements. The briefs in the District Court submitted by plaintiff and in this Court actually characterized the claims as affirmative misstatements. That should really end the discussion under whether or not affiliated you applies or not. What the plaintiffs are actually arguing here is that the omission was Barclay's failure to tell the world that it's affirmative. Tell me what difference it makes, though, if there are misrepresentations under basic. You still get the presumption. Tell me what difference it makes. Well, under affiliate, we don't think that the basic presumption has been properly invoked and we actually believe we rebutted it through price impact. So let's assume you have it. How does it make a difference which hole that peg is put into, whether they're misrepresentations or omissions? Because at trial, Your Honor, the price impact will still be evidence actually at trial for talking about the basic world as opposed to the affiliated you presumption. In affiliated you, the Court there said, look, it's very difficult for a plaintiff actually to show reliance on an omission. So in this Court's DuPont decision, the Court said that the burden of persuasion then resides with the defendant to rebut that, which is extraordinarily difficult to do. And so it is very important for the Court to clarify in its opinion here whether or not the affiliated you presumption is available, and I think that's a very easy answer. This case involves positive statements. Are you saying — let me just make sure because I know that you're going to get to this issue — but are you saying that the DuPont case has no relevance if we agree with you that the basic presumption applies? Yes, I do. And let me address that now just to deal with price — Well, I got ahead, so — All right. Let's deal with price impact and the standard. I think this is an easy question for this Court. What evidentiary standard applies? The Federal Rules of Evidence — This is assuming the basic presumption. That's right, assuming the basic presumption. Under the basic presumption, the Federal Rules of Evidence 301 would apply. The Federal Rules of Evidence under clear case law are statutory. They're treated as law by the Court. And that's why the Eighth Circuit in Best Buy — and this issue was briefed to them — easily decided that the rule that applied to basic was Federal Rule of Evidence 301. It's the only circuit court to date, post-Halliburton II, to decide this, and they decided the Federal Rule of Evidence 301. And we would urge this Court not to create a circuit split with the Eighth Circuit by saying Federal Rule of Evidence 301 does not apply. Now, when you look at the language — Do you think the concurring opinion in Halliburton II suggests, though, that it is a preponderance standard? No. No, I don't. I think that even Justice Ginsburg there uses the showing standard. And importantly, she said plaintiffs with tenable claims should have no problem making the showing. The plaintiffs here do not have tenable claims. And we'll get to their price maintenance theory in a second. Their price maintenance theory makes no sense in this case. Now, let's focus on the plain language of Federal Rule of Evidence 301. It said it applies to all civil cases unless a Federal statute or the rules of evidence say otherwise. The rules of evidence don't say otherwise, and no Federal statute says it doesn't apply. And so that's why the Eighth Circuit was correct in applying Federal Rule of Evidence 301. Well, let's go back to my question about DuPont, because DuPont is a case that involved 10B-5 and used the affiliated presumption. I grant that. But it blew right past 301 and said it doesn't apply because we've got, consistent with the language of 301, a statute, an anti-fraud statute. Why wouldn't that same logic apply in the context of a basic presumption? In that court, Your Honor, first of all, I would say that that case was decided before basic. Basic itself, and let's not forget this, basic itself cites Federal Rule of Evidence 301. And the Ice Circuit adopted Federal Rule of Evidence 301. Also, the issue of whether or not Federal Rule of Evidence 301 applied was not raised – I looked at that. It's very interesting. What it does is it cites two things. It cites to an article and then it cites to the advisory committee notes, really. And the advisory committee notes seem to suggest that we're going to reject this bursting bubble idea relating to the presumption. So we're going to reject this idea that all a defendant needs to do is produce some evidence. Is that fair? Am I misreading the citations? Right. So that advisory committee note was sent to Congress, and what Congress did when it enacted the Federal Rules of Evidence is it actually disagreed with the advisory committee notes. And the Congress is the one who enacts the Federal Rules of Evidence, and they adopted a different standard. So how anyone could say that rejected advisory committee notes somehow evince congressional intent when Congress expressly rejected the standard set forth in that advisory committee notes is just wrong. And they cite the actual rule, and the rule does have the proper allocation of burdens. But let's look at BASIC and let's look at Halliburton 2. In BASIC and Halliburton 2, the Court nowhere says that the standard, that the burden of persuasion rests with the defendants. The Court could have quite easily have used those words, but instead they used the any-showing standard. And the any-showing standard, that there's a lack of price impact, is consistent with the allocation of burdens in Federal Rule of Evidence 301. And that's why I think the Eighth Circuit really didn't struggle with this question. Federal Rules of Evidence 301 is a law. It applies in all civil cases. Section 10B cases are civil cases. So we're going to apply that to that, to the BASIC presumption. What about the language there, you talked about it earlier, therefore should impose no heavy toll on securities fraud plaintiffs with tenable claims. If it's just a burden to go forward, it would destroy BASIC, wouldn't it? No. No, absolutely would not destroy BASIC. Now the plaintiffs here go on and on about how efficient the market is for Barclays, and it's very easy to show price impact. So that's in complete tension with their scare tactic, that somehow it will burst the bubble and plaintiffs will never be able to prove price impact. That's not true. If the defendants, as we did here, come forward and produce evidence that demonstrates that there's a lack of price impact, and not only did we demonstrate it, we demonstrated it under any standard, it's undisputed that there was a lack of price impact in this case. And what would happen under that circumstance, though, is the presumption is rebutted, then the defendants have to buy a – the plaintiffs, by a preponderance of the evidence, have to show price impact. And they're arguing in their briefs that the corrective disclosure shows price impact. So why is it that it would prevent plaintiffs from showing price impact in their case? The words in the very brief contradict what they're trying to argue to this Court. And that's what Federal Rule of Evidence 301 says. If we don't like Federal Rule of Evidence 301, then the plaintiffs should lobby Congress to actually change the law and say that Federal Rule 301 does – Federal Rule of Evidence 301 does not apply. Alito, what about the amicus briefs by the evidence professors that they point out that there's many instances where the statute may be silent as to the preponderance of the evidence, but in interpreting those statutes, the courts have said it is a preponderance standard. There's a list of ten of them in their brief. What do you say about that? Your Honor, I was completely unpersuaded by the evidence scholars' brief. The presumptions that they talk about in those cases are ones – If you had been persuaded, that would have been a problem. The presumptions they talk about there apply in administrative hearings, criminal cases, cases where the presumptions were used to interpret a statute, and those are the cases Your Honor is referring to, or the presumption was really just an assumption of fact or an affirmative defense. The one thing that they did not cite is a single case from the Federal courts where they were clear on the face of the Federal Rule of Evidence 301 that applied in all civil cases. That issue was presented to the court, and the court rejected it despite clear congressional intent. And here, again, it's easy because in Basic we cite 301. The Eighth Circuit has decided this question. We know currently the Fifth Circuit, of course, has this question before it in Halliburton 3, and also a panel of this Court will be considering in the Goldman Sachs case. And in all of those cases, the parties are debating the clear language of Rule 301. If the Federal courts are correct that the Federal Rules of Evidence in many courts, including a Supreme Court case, have said they do have the force of law, then what is the logic for a court actually to ignore the law in applying it to this case? Let me just understand how you distinguish, and we'll give you a little bit more time, how you distinguish DuPont. Your argument is that it preceded Basic? It also preceded Basic, but, Your Honor, that's a unique case. The affiliated-you presumption of reliance is a very different presumption of reliance than Basic. But the idea, the Basic idea, Basic with a small b, of a presumption and the application or not of 301, there's really no difference between the Basic presumption and the affiliated-you presumption. There is a very significant distinction. In fact, this Court in Wiles and this Court in Starr have noted the distinction between the affiliated-you presumption and also the Basic presumption.  As 301? Or as 301 applies? No, but the difference between the two assumptions. The reason why affiliated-you has been limited by this Court in the Wilson decision and this Court in Starr is because it's based on its very unique facts that it's a pure omission case. And in pure omission cases, there are no positive statements upon which the plaintiff can attempt to prove price impact. They don't exist. So, but why should that fact change the 301 analysis? It shouldn't. It should, to the extent this Court and perhaps the direction-the Court, the intervening decision by Basic, right, in 301, right, would require this Court to ignore the decision in DuPont and limit it to its facts in DuPont. There, the Court in DuPont and also affiliated-you, what they look to is in pure omission cases, and they were guided by the Federal common law. And in the Federal common law, it was acknowledged that causation and fact was assumed in omission cases because it's difficult for the plaintiff to actually demonstrate reliance on something that's not said in terms of silence. And that's why those cases are treated differently. So your position must be, I think, because I'm troubled by DuPont, right? It tells us to go in one direction, and you're telling us, I think, that that has been abrogated, at least in relevant part, by Basic. That is correct. Basic cited Federal rule of evidence 301. The parties in DuPont actually did not brief, and we'll hear from the appellees whether they did, whether they briefed that issue to DuPont. We don't believe it was briefed to them. And then Basic comes out, it cites Federal rule of evidence 301, and the Eighth Circuit adopts Federal rule of evidence 301. Now, if I could just have just one minute on the undisputed evidence here. So, so why is there no lack of, of, of no price impact? Well, there's no price impact here. The, the, the, the plaintiffs here have finally conceded in the brief in this Court that the 13 affirmative misstatements were, in fact, immaterial. If they're actually immaterial, there would be no price impact as a matter of law. And the two experts below agreed with that. The plaintiffs here acknowledge that and have only argued, based on rank speculation, that the artificial inflation that came out at the time of the corrective disclosure was somehow related to the fraud in this case. But the fraud in this case, as framed by Judge Shindlin in her motion to dismiss decision, was that after Barclays settled the Libor cases in June of 2012, it made a statement in February 2013 that it would work to restore its integrity. And she said, after it made that statement, the 13 remaining statements about the operation of its dark pool could have, if false, indicated to the market that Barclays was, in fact, not acting with integrity. But prior to that point in time, she ruled that the statements were immaterial. It was only Barclays' affirmative statements to the market that it would restore its integrity, according to Judge Shindlin, that led to these LX statements being material. So when we deposed their expert under Roath, we asked him, where did the artificial inflation come from? At what point in time was artificial inflation that came out on the corrective disclosure created? He said, sometime prior to the class period, August 2, 2011. Well, what we know is that the first statement that the court found with respect to Barclays' integrity was February 2013. So what the plaintiff effectively, the expert, testified to was that the artificial inflation came into the stock. He had no idea when. And it was constant throughout the class period and then was released when Barclays was sued by the New York Attorney General. Based on that testimony alone, it's clear that that artificial inflation had nothing to do with the alleged fraud, which started 18 months, the alleged fraud started 18 months, after he says was the earliest period that the artificial inflation came in. Moreover, the only empirical- I guess the theory is that the state, well, as you articulated, I think, is that the prior statements were made fraudulent by subsequent statement. That's right, that's right. And in addition to that, they claim that there's price maintenance here, but the price maintenance theory doesn't work in this case. A price maintenance, and the way I understand their theory, is they're claiming that our LX statements were confirmatory statements, false confirmatory statements that confirmed the market's prior expectation with respect to Barclays that it was acting with integrity. But that simply could not have been, they could not be confirmatory false statements because there was nothing in the record that demonstrates that the investors had this expectation with respect to Barclays' integrity. Because it wasn't until February 2013 that Barclays made these statements about integrity. And so the undisputed evidence, the only empirical evidence that was submitted was submitted by defendants. And what we submitted were two studies that showed that when companies, when regulators file lawsuits or bring actions against companies, there's statistically significant stock drops. Their expert, under oath, actually agreed with that. He said that the announcement of regulatory matters can cause a statistically significant stock drop. And so the only empirical evidence explaining the stock drop was from defendants showing it was unrelated to the alleged fraud. In addition to the testimony of the plaintiff who said this artificial inflation came into the stock 18 months before the first allegedly material false statement. So if you adopt a conclusive standard, a beyond the reasonable doubt standard, we still win with respect to price impact because we completely severed the link between the fraud here and any price impact. And your honor, I do have a point on the efficient market, the efficiency standard. The court wants to hear on that, otherwise I can. Maybe we'll hear you on verbatim. Okay, thank you. Mr. Lieberman. Good morning, your honor. Jeremy Lieberman from the Pomerantz Firm on behalf of plaintiffs. I apologize for any delay I caused this morning. I think we should just dive in, I think, to the 301 issue. What we've heard today so far is that DuPont somehow does not apply. Assume the affiliated use, that presumption does not apply. Your honor, for purposes of this discussion, yes, yes. Assuming that that does not apply, it seems like a lot of the focus has been on whether or not DuPont, the analysis should apply or not, and whether or not affiliate use doctrine somehow applies. And that analysis applies in this instance. We needn't rely, your honor, on DuPont. We have this court already in the Salomon case and the Saris Partners case, side in the Salomon case where they've already on basic have allocated the burden of the proof. So Saris Partners was not cited in our brief, but it was cited in the Salomon case, which was cited in our brief. I'll give the court the citation. It's Saris Partners versus GEL Associates, 918 F2nd 349, pin site 360, a 1990 case, post basic, and post basic citation to rule 301, and the court says as such. Basic creates a rebuttable presumption of reliance and shifts to the defendants the burden of proof as to that element of the claim. Now, 301 says that the burden of persuasion does not shift. Saris Partners has said unequivocally, when it comes to basic, the burden does shift. And we'll cite again from the Salomon case, which we cite in our brief, Salomon Metromedia. Under basic, the burden of showing that there was no price impact is properly placed on defendants at the rebuttal stage. We didn't rely on DuPont. Certainly DuPont is consistent with the thought of Halliburton and of, we believe, this court. We have the court on its own analyzing basic, post basic, post the citation, the mere reference to the C also, to 301 saying unequivocally. The burden of proof shifts to defendants. When we're dealing with burden of proof, it's clearly preponderance of the evidence. It's simply not a question in this circuit. This circuit doesn't have to craft and create a new rule. This is not an issue of first impression. It is already black letter law in this circuit. The burden of proof shifts on defendants. And really, that issue is irrelevant. What I'd like to- The burden of showing that there was no price impact is properly placed on defendants. That's Salomon Metromedia, but let me quote Saris Partners. Basic creates a rebuttable presumption of reliance and shifts to defending the burden of proof. The burden of proof. I don't think there's any way we can analyze burden of proof to mean anything but preponderance of the evidence. And we apologize we've not cited that in our brief. It's an important omission, so to speak, from your brief, is it not? Your Honor, fair enough, fair enough and apologies. But it is cited by the Salomon case. We're not creating out of whole cloth. And the Salomon case, we do cite to in our brief. But it says straight out, the burden of proof shifts on defendants. It's really a closed issue, Your Honor, in this circuit. And I think what defendants have said about the Best Buy case, Best Buy never said they adopted 301. They make the same reference, the same passing reference to 301 that Basic does. And so, and really, in the Best Buy case, there's a finding by the court that there was substantial evidence of lack of price impact. Not the minimal showing that defendants propounds here, but substantial impact. And then we have to ask ourselves a question, Your Honor. Did the basic court think that they were setting forth this minimal showing standard? Well, let's look at what Justice Brennan and Justice Blackmun and their correspondence. They felt the rights rebuttal was of little use to defendants. I've got to tell you, it was interesting to me to see correspondence from Justice Blackmun and Justice Brennan back and forth about a case, but what relevance does that have to do? I mean, if you relied on our voting memos, that would mean nothing. Your Honor, then let's turn, I would hope at least the concurrences in Halliburton might mean something. There, Justice Thomas, concurring and somewhat perhaps mournfully, stated that the basic presumption was, in effect, irrebuttable. It was irrebuttable because it was such a high burden, because it was so difficult. And Justice Ginsburg, we know what she said already, saying that it was simply provided not a high burden for plaintiffs to meet. Now, let's play out how defendant's formulation would work here. We meet on the criteria of Rule 23 and of establishing an efficient market, and we get our presumption. And let's take an instance of where we have a restatement, and the restatement deals with account receivables. The stock price declines, we have an efficient market pursuant to the court's ruling. Now, let's say we have 50 analyst reports, and there's one analyst that says, I couldn't care less about account receivables. That means nothing to the future cash flows of the company, it's simply irrelevant to me. Now, is that admissible evidence? Certainly, and according to defendant's formulation, that would completely eviscerate the basic presumption. They can waive that one analyst report out of 60 that are very concerned about the restatement and say, well, this is evidence. We've rebutted the entire presumption. Your Honor, there's simply no basis for that. And that's why this circuit has held that the burden of proof falls upon defendants. The Ninth Circuit has, in their jury instructions, has held that the burden, it's a preponderance of the evidence standard. And simply no court in the past 30 years has ruled that any of this minimal showing applies. And it's interesting that defendants are saying, well, these are pre-Halliburton. Halliburton did nothing to shift the burden of proof here. The 301 reference has been around for about 30 years, and no court has said, well, just offer some evidence, and you could entirely eviscerate the basic presumption. It would simply be an unprecedented standard, Your Honor. And so- Every, no, the question is under affiliate duty, it's predominantly omissions. Why not? Because we have to look at these substantive- You could then always cast them as omissions and get the presumption. The issue is the main, when you have a case, let's say, where earnings or net income, and those statements are per se false, that is primarily a misrepresentation claim. When you have a situation, as the district courts have found in this circuit, where the statements may be true, but really what's at issue is the omissions, that is when it turns into an affiliated youth case, a youth case. Really, what's at issue, look, there are only three theories of securities fraud, a misstatement, an affirmative misstatement, half-truth, or omission. In the context of an omission, as I understand it, but maybe I had it wrong for many years, you need some duty to disclose. In the context of a half-truth, which is what I think you're getting at, that's really a form of a misstatement. That's not an affiliated youth presumption type of fraud. Your Honor, what we would say is- Why isn't what you're describing a half-truth? Because in an instance where, I'll just give an example, where defendants had actually, in their brief, pointed to these statements as showing there was immateriality. There's a statement, sophisticated surveillance framework that protects clients from predatory trading activity in LX. This is them advertising the LX products. And it could be, and it may have been, that this framework was indeed something that protected clients. What they didn't know, what investors didn't know, was that actually, many times, it was being overridden. So what we're dealing with, the question is, is what is the main thrust of the complaint? Judge Shindlin had it held here, in this very unique case, that the statements per se on their own, LX was immaterial to the company's financials, it was their illegal conduct. An unethical conduct that was being hidden, which was really material, and that was the omission. So I think you look at the quality of the statement made by defendants and say, is this something that investors are looking at on their own? Or is there something underlying that's really being hidden that is the crux of the case? And Judge Sullivan, in the Wyeth case, had held that there was a pharmaceutical case where there was a, the company announced their FDA process and their results, but they didn't disclose the safety issues. And so again, that could be a half-truth, and Judge Sullivan held there in that case, but no, this was an omissions case. In their numerous case, Judge, in the Parmalat case, had it held as well. Judge Kaplan, and a number of others as well that we cite in our briefs. But I think we, just turning back to the 301 issue, it really would be an unprecedented venture by defendants to, and really, Basic had said that defendants in Halliburton had tried to make a requirement by plaintiffs to prove, by preponderance, that there was price impact. And what the court said is this would dramatically alter the basic requirement. Now let's take defendant's formulation. Okay, we've got the basic presumption, and they could just waive any evidence in front of the court, any admissible evidence with their minimal showing, and that would then cause a burden on us to prove price impact. That would dramatically alter the basic presumption as well. It would basically be the same thing that defendants were trying to accomplish in Halliburton. Some admissible evidence is simply not enough to burst the entire edifice of Basic. Well, what if, let's use the following, maybe this case. What if in this case, the plaintiff had satisfied at least the four camera factors without an event study? And the defendant comes up, but just comes up with an event study. Is that satisfying a burden of production, or is that satisfying a burden of persuasion? It would depend on what the purpose of the event study was. If it's to defeat camera five, and it shows that there's a lack of that, which did not occur here, that there was a lack of cause and effect, that could actually stop the class from being certified per se under the basic presumption. So you may not even get the presumption to begin with. But if we do get the presumption, if the court holds that it's an efficient market, then defendants need to prove by preponderance. That's the formulation. Otherwise, just throwing some minimal showing here would really- Is there a case that you can point to, that is a company, frankly, where a large public company's stock, ADR, ADS, whatever it is, whatever security it is, is not trading in an efficient market? The overwhelming majority of securities traded on a major national exchange are efficient, your honor. That was the common sense presumption by basic. This was common sense. And really, there was a right of rebuttal that was given to defendants, but it was something that was deemed to be by the authors, and in the concurrences as well, as something that was very difficult to prove. They have to prove the negative. They have to prove a lack of price impact. And the minimal showing that defendants are propounding would simply make basic nugatory. So your point, your argument, really would be what your adversary said, which is if you want to change it, take it to Congress. If they want to change it, take it to Congress, I think it's too late to take it to Congress. Halliburton, I guess they could do something, but- Nothing's too late. Nothing's too late, your honor. Fair enough. And so, on that issue, with respect to the event study, or lack thereof, defendants, once again, we're dealing with basics, common sense standard. That was something that the basic had said, and the Halliburton Court reaffirmed, this is a fairly modest premise. And we're dealing here with a company called Barclays, which is the fourth largest bank in the world. And so that fairly modest premise does apply, and we provided substantial evidence to meet that premise. We showed that there was over 29 analysts covering the company, 700 analyst reports issued during the class period. We showed that there was, it was a trade on the New York Stock Exchange. We showed that there was a very small put call parity of about one cent or two cents, which shows that trading is done very efficiently. And so we showed the court, actually, of the camera factors and Krogman, seven of the eight camera Krogman factors were met by Judge Shindlen's view overwhelmingly. And so the question was, did we have to put forward evidence on the fifth camera factor? In fact, we did. Let me just go back to Judge Joni's question about affiliated youth. If we were to disagree with you about the applicability of that presumption, but agree with you about the basic presumption, what practical effect would that have in this case? Absolutely none. We'd have a certified class there. Your Honor, but we think both apply, but it would have absolutely none. But what advantage do you get from having both apply? It was just, we felt these were two very credible avenues where a class could be certified in this case. Is there anything beyond the class certification stage that would give you an advantage or disadvantage? I don't see it, Your Honor. I don't see it. I think a class is certified regardless. I think I'll take the court's time no longer and rest on our papers. Thank you. Thank you. Mr. Scott. Thank you, Your Honor. Just quickly on a few points you made. The Solomon Court opinion was cited throughout the party's paper in amicus. That opinion itself does not say the burden of persuasion sits with us.  What was the name of that, the other case? Seris was the name of it. If he's going to, we would ask for the ability to submit a two page letter addressing it, because this was not raised by any of the amicus briefs on their side or by plaintiffs themselves. I'll just submit that by the end of this week, Friday. Okay, and we'll do that, Your Honor. Then with respect to just federal rule of evidence 301, on its plain face, it applies here. There hasn't been a court, as far as we're aware of in the Second Circuit, that has considered the issue and the plain language of federal rule of evidence 301 to a basic presumption of case. So we believe, just like it was applied in Best Buy, it should be applied here. Now, they complain that applying federal rule of evidence here would eliminate plaintiff's ability to certify classes, but that's simply not true. They could come forward, as they did here with an event study, to try and demonstrate price impact. And indeed, they argue in their papers they've demonstrated price impact. And that's what happens when you have the allocation of burdens applying under federal rule of evidence. If we come forward with enough evidence to rebut the presumption so it vanishes, they then have to come forward and meet their burden of persuasion. There's nothing unfair with that, and in fact, they argue, they could readily do that. Now, with respect to Affiliated Butte, I would just note, there was nothing, the Affiliated Butte, where you have a half-truth case. The statement itself, affirmatively made, is true. It's the undisclosed information that renders it misleading. That's not their case. Their case is that our statements were false on their face. So Affiliated Butte doesn't apply. And I would argue that- Is your view that Affiliated Butte applies to half-truths as well as omissions? No, I would argue the strict literal interpretation of it, it only applies to pure omission cases, and that's not this case. Now, the last point I'll make is on efficiency. It cannot possibly be that the district court's decision here is correct in light of Bombardier. Bombardier said that the foundation of the fraud on the market theory, the essence of efficient market, is that there's a causal relationship between unexpected material news and a stock price reaction. What the district court relied on before are not direct evidence of cause and effect. They're only characteristics that the market might be efficient. And Halliburton, too, undermines Plano's position. Is subject of litigation Petrobras? Yeah, in part it is. There, I think there was evidence submitted with respect to causation, but there was a question about the directionality. Did the price move have to move in the direction- The panel might get to this issue that you're- It may, but the court there, Judge Rakoff, did not say, as far as I know, that you never have to consider Cammer Factor V. That's what Judge Shinlen said here. And if this court doesn't reverse that erroneous legal standard, you'll essentially have a presumption on behalf of a presumption. Because for all large cap-traded companies who have large daily volume of stocks who trade on the New York Stock Exchange, the plaintiffs will just cite the other indirect Cammer Factors. Is that your position, or your client's position, that the ADS, that there's any imaginable world in which the depository shares are traded in an inefficient market? Yeah, there's evidence in this case that Barclay's ADS was inefficient. The plaintiff's own expert report tried to demonstrate efficiency, but when you correct for the errors in the plaintiff's report, only a handful of days, something like 25 or 30% of the days, actually show efficiency. So what does that mean? 75, 70% of the days show inefficiency. And we would argue, if the one direct factor that's showing cause and effect is showing inefficiency, how can a court certify it just because they think Barclay's a large company and it should trade efficiently? There are all sorts of empirical studies now, and I just wanted to make this point about Halliburton II. Halliburton II undermined the fact that markets were generally efficient. What the Supreme Court majority opinion says is that some markets may be more or less efficient. And the question about whether in this particular case, for this class period, the stocks traded efficiently, what Halliburton II said, and they used the phrase, it's a matter of proof. And so in other words, the lower courts need to decide, based on the evidence below, whether or not the markets trade efficiently. And how can a standard be adopted by courts that the one factor that this court found is the foundation of the fraud on the market presumption? And it actually said in that opinion in Bardia, without a causal relationship, it's difficult to presume that unexpected material news was being incorporated into the stock price. If it's difficult to reach that conclusion, then you cannot have a conclusion that the market traded efficiently. And that's why we think the district court here ignored camera factor five and said it didn't even need to consider it. Because the evidence here showed inefficiency with respect to that standard. And this court should not allow plaintiffs to escape their burden to actually prove efficiency by simply saying that with respect to large market cap companies, we'll just assume efficiency. That's simply not the law. Thank you, your honors. Thank you very much. While argued on both sides, we'll reserve decision and I'll ask the clerk to adjourn court. Court is adjourned.